1   L. JULIUS M. TURMAN, SBN 226126
    SACHA M. STEENHOEK, SBN 253743
2   MORGAN, LEWIS & BOCKIUS LLP
    One Market, Spear Street Tower
3   San Francisco, California  94105-1126
    Telephone:      415.442.1000
4   Facsimile:      415.442.1001

5   DARYL S. LANDY, SBN 136288
    MORGAN, LEWIS & BOCKIUS LLP
6   2 Palo Alto Square
    3000 El Camino Real, Suite 700
7   Palo Alto, California  94306
    Telephone:      650.843.4000
8   Facsimile:      650.843.4001

9   MARK S. DICHTER, Admitted *Pro Hac Vice*
    MORGAN, LEWIS & BOCKIUS LLP
10  1701 Market Street
    Philadelphia, Pennsylvania  19103
11  Telephone:      215.963.5000
    Facsimile:      215.963.5001
12  Attorneys for Defendants
    MORGAN STANLEY SMITH BARNEY LLC
13  and JIM NIELSEN

14

15                  UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17

18  JESSE BLOUNT III, STEVE PARKER, and        Case No. C-11-02227 CRB
    TIFFANY PEREZ,
19                                             **DEFENDANTS MORGAN STANLEY**
                      Plaintiffs,              **SMITH BARNEY LLC AND JIM**
20                                             **NIELSEN'S NOTICE OF MOTION AND**
            v.                                 **MOTION FOR SUMMARY JUDGMENT**
21
    MORGAN STANLEY SMITH BARNEY LLC            Date:          April 26, 2013
22  and JIM NIELSEN, as an individual,         Time:          10:00 a.m.
                                               Courtroom:     6, 17th Floor
23                    Defendants.              Judge:         Hon. Charles R. Breyer

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 26, 2013 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 6 of the above-entitled Court, located at 450 Golden Gate Ave, San Francisco, CA 94102, Defendants Morgan Stanley Smith Barney LLC ("MSSB") and James Nielsen ("Nielsen") (collectively, "Defendants") will, and hereby do, move for summary judgment, or, in the alternative, for partial summary judgment on the Complaint of Plaintiff Jesse Blount III ("Plaintiff" or "Blount") in this action as follows:

A.   For summary judgment in favor of Defendants and against Blount; or

B.   Alternatively, if for any reason summary judgment as to Blount's entire action is not granted, for partial summary judgment in favor of Defendants and against Blount on each of the following issues:

    1.   Blount's First Claim for Relief for race discrimination in violation of Title VII of the Civil Rights Act of 1964, United States Code §§ 2000e, *et seq.* ("Title VII") and the California Fair Employment and Housing Act ("FEHA") because Blount's allegations do not rise to the level of actionable adverse treatment and/or occurred prior to the date as of which Blount released all potential claims.

    2.   Blount's First Claim for Relief for race discrimination in violation of Title VII and FEHA because Blount cannot show he suffered any adverse employment actions *because of* his race.

    3.   Blount's First Claim for Relief for race discrimination in violation of Title VII and FEHA because MSSB had legitimate, non-discriminatory reasons for each of its actions, and Blount cannot show pretext for race discrimination.

    4.   Blount's Second Claim for Relief for retaliation in violation of Title VII and FEHA because Blount's allegations do not rise to the level of actionable adverse treatment and/or occurred prior to the date as of which Blount released all potential claims.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2

i

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

5.  Blount's Second Claim for Relief for retaliation in violation of Title VII and FEHA because Blount cannot show he suffered any adverse employment actions *because of* his engagement in a protected activity.

6.  Blount's Second Claim for Relief for retaliation in violation of Title VII and FEHA because MSSB had legitimate, non-retaliatory reasons for each of its actions, and Blount cannot show pretext.

7.  Blount's Third Claim for Relief for race discrimination in violation of 42 U.S.C. Section 1981 ("Section 1981") because Blount's allegations do not rise to the level of actionable adverse treatment and/or occurred prior to the date as of which Blount released all potential claims.

8.  Blount's Third Claim for Relief for race discrimination in violation of Section 1981 because Blount cannot show he suffered any adverse employment actions *because of* his race.

9.  Blount's Third Claim for Relief for race discrimination in violation of Section 1981 because MSSB had legitimate, non-discriminatory reasons for each of its actions, and Blount cannot show pretext for race discrimination.

10. Blount's Fourth Claim for Relief against Nielsen for race discrimination in violation of Section 1981 because Blount's allegations do not rise to the level of actionable adverse treatment and/or occurred prior to the date as of which Blount released all potential claims.

11. Blount's Fourth Claim for Relief for race discrimination in violation of Section 1981 because Blount cannot show he suffered any adverse employment actions *because of* his race.

12. Blount's Fourth Claim for Relief for race discrimination in violation of Section 1981 because Nielsen had legitimate, non-discriminatory reasons for each of his actions, and Blount cannot show pretext for race discrimination.

13. Blount's Fifth Claim for Relief for failure to prevent discrimination under FEHA because Blount cannot demonstrate MSSB discriminated against him based on his race.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

EU1/ 51445993.2

ii

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

14. Blount's Fifth Claim for Relief for Failure to prevent discrimination under FEHA because MSSB investigated and addressed each of Blount's complaints of discrimination.

15. Blount's Fifth Claim for Relief for failure to prevent retaliation under FEHA because Blount cannot demonstrate MSSB retaliated against him.

16. Blount's Fifth Claim for Relief for Failure to prevent retaliation under FEHA because MSSB investigated and addressed each of Blount's complaints of retaliation.

17. Blount's First through Fifth Claims for Relief are limited to the time period March 9, 2009 to the present based on Blount's execution of a Retention Agreement and General Release.

18. The allegations supporting Blount's First and Second Claims for Relief are limited to the time period January 16, 2010 to the present based on Title VII's statute of limitations.

19. The allegations supporting Blount's First, Second and Third Claims for Relief are limited to the time period November 11, 2009 to the present based on FEHA's statute of limitations.

This motion is brought pursuant to Federal Rule of Civil Procedure 56 on the ground that there are no genuine issues of material fact regarding any of Blount's claims, and Defendants are entitled to judgment as a matter of law. This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities included herein, the Declarations of Daryl Landy, Sacha Steenhoek, James Nielsen, Wendy Warner, and Greg Desmond, filed herewith, the Proposed Order, all pleadings and papers on file in this action, and such other argument and evidence as may be presented to the Court prior to or at the hearing on this matter.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                                    iii                          DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

**SUMMARY OF ARGUMENT**

1
2     Based on the undisputed material facts, Plaintiff Jesse Blount III ("Blount") cannot meet his
3 burden to prove any of his five claims for relief for race discrimination and retaliation against his
4 employer, Morgan Stanley Smith Barney LLC ("MSSB" or the "Company"), and his former
5 supervisor, James Nielsen ("Nielsen") (collectively, "Defendants"). Factually, Blount's complaints
6 have focused on seven categories of MSSB and/or Nielsen's alleged conduct:  1) decisions not to hire
7 some of the candidates Blount recommended as Financial Advisors ("FAs") or FA Trainees to work as
8 Blount's "partner"; 2) enforcing MSSB's Company-wide policy to limit internship positions to ten
9 months in duration, which Blount contends reduced his support at trade shows and seminars; 3)
10 changing Blount's administrative assistant assignment; 4) adherence to Company and financial service
11 industry regulatory requirements before permitting Blount to work from home on a regular basis; 5)
12 Nielsen's supposedly providing more "perks" to other FAs in Blount's branch office; 6) the
13 purportedly disparate distribution of departing FAs' accounts to FAs who remained in the branch; and
14 7) MSSB's investigations of Blount's complaints.  Contrary to Blount's unsupported allegations,
15 MSSB has provided Blount with the same (or better) working conditions than his peers, offering him
16 equal or better personnel support, incentives, and financial opportunities based on his production and
17 performance at the firm.

18     Blount is unable to demonstrate even a *prima facie* case of discrimination or retaliation.  First,
19 none of the actions about which Blount complains rises to the level of an adverse employment action.
20 *See Burlington N. & Santa Fe Ryco v. White*, 548 U.S. 53, 69 (2006) (supervisor's refusal to invite an
21 employee to lunch not an employment action); *Gosho v. U.S. Bancorp Piper Jaffray Inc.*, 2002 WL
22 34209804, * 4, Case No. 00-1611-PJH (N.D. Cal. 2002) ("subpar" sales assistance not an adverse
23 employment action); *Gosho v. U.S. Bancorp Piper Jaffray Inc.,* No. 00-1611-PJH, 2002 WL
24 34216845, * 3, (N.D. Cal. Oct. 1, 2002) (account assignment did not support a *prima facie* case of
25 discrimination absent a showing that plaintiff received fewer accounts than those to which she was
26 entitled); *Evans v. City of Sparta*, No. 5:10-cv-12, 2011 WL 3626639 n.4 (M.D. Ga. Aug. 17, 2011)
27 (decision not to hire candidates plaintiff recommended not an adverse employment action); *Martinez-*
28 *Santiago v. Zurich N. Am. Ins. Co.*, No. 07 Civ 8676 (RJH), 2010 WL 184450, * 7 (S.D.N.Y. Jan. 20,

1   2010) (short-term denial of ability to work from home not an adverse employment action); *Campbell v.*

2   *Alliance Nat. Inc.*, 107 F.Supp.2d 234, 246 n.8 (S.D.N.Y. 2000) (exclusion from social gatherings not

3   an adverse employment action).

4         Furthermore, even if any of the actions about which Blount complained rose to the level of an

5   adverse employment action, Blount can produce no evidence to show that MSSB or Nielsen acted with

6   discriminatory intent.  In fact, Blount cannot point to any evidence to demonstrate that he was treated

7   any differently or less favorably than his Caucasian peers, completely nullifying a *prima facie*

8   showing.  *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001) (a showing

9   that similarly situated employees were treated in a like manner to plaintiff negates any showing of

10  discrimination).

11        Because there is no genuine issue for trial, Defendants are entitled to judgment on Blount's

12  claims as a matter of law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2

v

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION .................................................................................. 1
II. STATEMENT OF UNDISPUTED FACTS ........................................... 1
  A. MSSB's Policies Prohibit Discrimination and Retaliation ................. 1
  B. Blount's Employment History and the FA Position ........................... 2
  C. Blount Signed Releases Of All Race Discrimination and Retaliation
     Claims For Conduct Occurring Before February 7, 2008 and March 9,
     2009 .......................................................................................... 2
  D. Blount's Allegations of Discrimination During the Post-Release Time
     Period ........................................................................................ 3
    1. There Is No Basis For Blount's Allegations That Defendants
       Discriminated Against Him By Allegedly Not Hiring A Partner
       For Him .................................................................................. 4
      a. Amy McCarthy .................................................................. 4
      b. Deming Du ....................................................................... 4
      c. Steven Parker .................................................................. 4
      d. Tiffany Perez .................................................................... 6
      e. Marianne Vernacchia ........................................................ 6
      f. Dedrick Rhone .................................................................. 6
      g. Julie Barros ..................................................................... 6
    2. There Is No Basis For Blount's Allegation That Defendants
       Discriminated Against Him By Terminating An Intern
       Assigned to Him ..................................................................... 7
    3. There Is No Basis For Blount's Allegations That Defendants
       Discriminated Against Him By Changing His CSA Assignment .......... 8
      a. MSSB Assigns CSAs to FAs Based Primarily On FA
         Revenue Generation .......................................................... 8
      b. Defendants Decided To Change Blount's CSA Based On
         Purely Non-Discriminatory Reasons ...................................... 8
      c. Blount's CSA Coverage Consistently Has Been Greater
         Than For Comparable Caucasian FAs .................................... 10
      d. September 2012: MSSB Assigns A New CSA To Work With
         Blount ............................................................................. 10
    4. There Is No Basis For Blount's Allegations That MSSB
       Discriminated Against Him By Requiring Him To Follow
       Company Policy Before Permitting Him To Work Regularly
       From Home ............................................................................. 11
      a. MSSB Policy and Securities Industry Regulations Require
         Company Approval For FAs to Work From Alternate
         Locations ......................................................................... 11
      b. Blount Informs MSSB, For The First Time, That He
         Regularly Performs Work At His Home .................................. 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2

vi

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

**TABLE OF CONTENTS**
(continued)

Page

          c.    *Blount Provides Medical Certification For the Need To Work From Home, and His Request is Granted* .......................... 12

    5.    **There Is No Basis For Blount's Allegations That Nielsen Provided Caucasian FAs With More "Perks"** ..................................... **12**

    6.    **There Is No Basis For Blount's Allegations That Nielsen Provided Comparable Caucasian FAs With Better Or More Accounts** ................................................................................ **12**

    7.    **There Is No Basis For Blount's Allegations That MSSB Failed To Investigate Blount's Complaints** .................................... **13**

          a.    *October 2010: Blount Complains About The Change In His CSA And Implies That Nielsen Is A KKK Member* ...................... 13

          b.    *A Thorough Investigation Demonstrates That There Is No Basis For Blount's Accusations* .................................................. 13

III.    **STANDARD OF REVIEW** ............................................................... **14**

IV.    **LEGAL ARGUMENT** .................................................................... **15**

    A.    **All Of Blount's Claims Are Limited To Actions Allegedly Occurring March 9, 2009 Or Later Because Of His Release.** ............................................. **15**

    B.    **Blount's First, Third, and Fourth Claims Of Race Discrimination Against MSSB And Nielsen Under Title VII, FEHA, And § 1981 Fail Because Blount Cannot Establish A Prima Facie Case Of Discrimination Or Show Pretext** ............................................ **15**

        1.    **Blount Cannot Establish A Prima Facie Case Of Discrimination** ...... **16**

            a.    *Blount Cannot Show He Suffered Any Adverse Employment Action* ......................................................................... 16

               (i)    Not Hiring Some of Blount's Referral Candidates Is Not an Adverse Employment Action Against Blount ....... 17

               (ii)    A Change In Support Staff Is Not an Adverse Employment Action .......................................................... 18

               (iii)    MSSB's Requirement That Blount Obtain Approval To Work From Home Regularly Is Not an Adverse Employment Action .......................................................... 19

               (iv)    Not Taking Blount to Lunch Is Not an Adverse Employment Action .......................................................... 19

               (v)    Policy-Based Account Re-distribution Is Not an Adverse Employment Action .............................................. 20

            b.    *Even If The Actions Were Adverse, Blount Cannot Prove Any Adverse Actions Were Taken Because Of His Race* .............. 20

            c.    *Defendants' Actions Applied Equally To All Similarly Situated FAs, Disproving Discriminatory Intent* .......................... 20

        2.    **Defendants Had Legitimate Business Reasons For Each Of The Actions Blount Alleges Were Adverse** ................................ **21**

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2

vii

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

**TABLE OF CONTENTS**
(continued)

Page

        3.     **Blount Cannot Show That Defendants' Reasons Were Pretextual** ........................................................................ 21

   C.   **Blount's Second Claim For Retaliation Against MSSB Under Title VII and FEHA Fails Because He Cannot Establish A Prima Facie Case Of Retaliation Or Show Pretext.** .................................................... 22

        1.     **Blount Cannot Establish A Prima Facie Case Of Retaliation** ........... 22

               *a.*    *Blount Did Not Engage In Protected Activity During The Post-Release Period Until October 2010* ...................................... 22

               *b.*    *Blount Cannot Show He Suffered Any Adverse Employment Action* ......................................................................................... 22

               *c.*    *Blount Cannot Prove A Retaliatory Motive* .................................. 23

        2.     **MSSB Had Legitimate Business Reasons For Each Of The Actions Blount Alleges Were Adverse** ..................................................... 24

        3.     **Blount Cannot Show That MSSB's Reasons Were Pretextual** ........... 24

   D.   **Blount's Claim Of Failure To Prevent Discrimination And Retaliation Fails Because He Cannot Show Discrimination Or Retaliation Occurred.** ............................................................................................. 24

V.     **CONCLUSION** ........................................................................................... 25

Morgan, Lewis & Bockius LLP
Attorneys at Law
San Francisco

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................... 14

*Aragon v. Republic Silver State Disposal Inc.*,
    292 F.3d 654 (9th Cir. 2002) ........................................................................................ 15

*Bd. of Tr. of Keene State College v. Sweeney*,
    439 U.S. 24 (1978) ........................................................................................................ 16

*Brockman v. Snow*,
    217 Fed.Appx. 201 (4th Cir. 2007) .............................................................................. 19

*Burlington N. & Santa Fe Ryco v. White*,
    548 U.S. 53, 69 (2006) .................................................................................................. 19

*California Fair Employment & Hous. Comm'n v. Gemini Aluminum Corp.*,
    122 Cal. App. 4th 1004 (2004) ..................................................................................... 25

*Campbell v. Alliance Nat'l Inc.*,
    107 F. Supp. 2d 234 (S.D.N.Y.) .................................................................................... 20

*Chuang v. Univ. of Cal. Davis, Bd. of* Trustees,
    225 F.3d 1115 (9th Cir. 2000) ...................................................................................... 16

*Cohen v. Fred Meyer, Inc.*,
    686 F.2d 793 (9th Cir. 1982) ........................................................................................ 24

*Cornwell v. Electra Cent. Credit Union*,
    439 F.3d 1018 (9th Cir. 2006) ...................................................................................... 16

*Davidson v. Midelfort Clinic, Ltd.*,
    133 F.3d 499 (7th Cir. 1998) ........................................................................................ 24

*Davis v. Team Elec. Co.*,
    520 F.3d 1080 (9th Cir. 2008) ...................................................................................... 16

*Evans v. City of Sparta*,
    No. 5:10-cv-12, 2011 WL 3626639 (M.D. Ga. Aug. 17, 2011) .............................. 17, 18

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ................................................................................................. 17, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Flait v. N. Am. Watch Corp.*,
   3 Cal. App. 4th 467 (1992) ..................................................................... 22

*Godwin v. Hunt Wesson, Inc.*,
   150 F.3d 1217 (9th Cir. 1998)................................................................. 24

*Gosho v. U.S. Bancorp Piper Jaffray Inc.*,
   Case No. 00-1611-PJH 2002 WL 34209804 (N.D. Cal. 2002).............................. 18

*Gosho v. U.S. Bancorp Piper Jaffray Inc.*,
   Case No. 00-1611-PJH, 2002 WL 34216845 (N.D. Cal. 2002)....................... 18, 20

*Guz v. Bechtel Nat'l Inc.*,
   24 Cal. 4th 317 (2000) ................................................................. 16, 21, 22

*Hardage v. CBS Broad., Inc.*,
   427 F.3d 1177 (9th Cir. 2005)................................................................. 23

*Holmes v. Gen. Dynamics Corp.*,
   17 Cal. App. 4th 1418 (1993)................................................................. 23

*Horsford v. Bd. of Tr. of Calif. State Univ.*,
   132 Cal. App. 4th 359 (2005)................................................................. 22

*Jaffe et al. v. Morgan Stanley and Co. Inc. f/k/a Morgan Stanley DW Inc.*,
   Case No. C-06-3903-TEH...................................................................... 2

*Johnson v. Nordstrom, Inc.*,
   260 F.3d 727 (9th Cir. 2001)................................................................. 24

*Jordan v. Clark*,
   847 F.2d 1368 (9th Cir. 1988)................................................................ 23

*Kortan v. State of Cal.*,
   5 F.Supp.2d 843 (C.D. Cal. 1998)........................................................... 23

*Kraus v. Presidio Trust Facilities Div.*,
   704 F.Supp.2d 859 (N.D. Cal. 2010) ...................................................... 17

*Lynn v. Regents of the Univ. of California*,
   656 F.2d 1337 (9th Cir. 1981)................................................................ 22

*Martinez-Santiago v. Zurich N. Am. Ins. Co.*,
   No. 07 Civ. 8676 (RJH), 2010 WL 184450, (S.D.N.Y. Jan. 20, 2010) .................. 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................................................... 14

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ................................................................................................. 15, 22

*Morgan v. Regents of U. of Calif.*,
    88 Cal. App. 4th 52 (2000) ............................................................................................ 24

*Pardi v. Kaiser Foundation Hospitals*,
    389 F.3d 840 (9th Cir. 2004) ........................................................................................ 15

*Reeves v. Sanderson Plumbing Products*, *Inc.*,
    530 U.S. 133 (2000) ...................................................................................................... 16

*Richmond v. ONEOK, Inc.*,
    120 F.3d 205 (10th Cir. 1997) ...................................................................................... 24

*Romano v. Rockwell Int'l, Inc.*,
    14 Cal.4th 479 (1996) ................................................................................................... 15

*Salazar v. Locke*,
    No. CIV-5-10-1033 MCE, 2012 WL 843946 (E.D. Cal. Mar. 12, 2012) ........................ 17

*Slatkin v. Univ. of Redlands*,
    88 Cal. App. 4th 1147 (2001) ....................................................................................... 16

*Smith v. AVSC Intern., Inc.*,
    148 F.Supp.2d 302 (S.D.N.Y. 2001) ............................................................................ 19

*Snead v. Metro. Prop. & Cas. Ins. Co.*,
    237 F.3d 1080 (9th Cir. 2001) ...................................................................................... 21

*Stroman v. W. Coast Grocery Co.*,
    884 F.2d 458 (9th Cir. 1989) ........................................................................................ 15

*Strother v. S. Cal. Permanente Medical Group*,
    79 F.3d 859 (9th Cir. 1996) .......................................................................................... 18

*Texas Dept. of Cmty. Affairs v. Burdine*,
    450 US 248 (1981) ........................................................................................................ 16

*Trujillo v. N. County Transit Dist.*,
    63 Cal. App. 4th 280 (1998) ......................................................................................... 24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2

xi

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002)................................................................. 22, 24

*Wallis v. J.R. Simplot Co.*,
    26 F.3d 885 (9th Cir. 1994)............................................................ 16, 22, 24

*Yanowitz v. L'Oreal USA, Inc.*,
    36 Cal. 4th 1028 (2005) ........................................................................ 22

**STATUTES**

15 U.S.C. § 78c(a)(3)(a)(39) ........................................................................ 6

42 U.S.C.
    § 1981........................................................................................ 3, 16
    § 2000e-2(a)(1)................................................................................ 18
    § 2000e-5(e) ................................................................................... 15
    §§ 2000e *et seq.*............................................................. 3, 15, 16, 22, 23,
    .................................................................................................. 24

Cal. Gov't Code
    §§ 12940 *et seq.* ........................................................ 3, 15, 16, 22, 23, 25
    § 12940(k) ................................................................................... 26
    § 12960....................................................................................... 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(e)............................................................................ 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

  Plaintiff Jesse Blount III ("Blount"), who is African-American, has been a successful Financial

4

Advisor ("FA") for Defendant Morgan Stanley Smith Barney LLC ("MSSB" or the "Company") and its

5

predecessors since 1985.  In 2009, as part of a retention program for high-performing FAs, and again in

6

2012, he signed agreements releasing MSSB and its predecessors from the same claims raised in this

7

lawsuit based on any events occurring before March 9, 2009.  The undisputed facts demonstrate that

8

during the post-release period since March 9, 2009, MSSB has provided Blount with the same or better

9

working conditions than his peers, offering him equal or better personnel support, incentives, and

10

financial opportunities based on his revenue generation (which is the primary measure of an FA's

11

performance at the Company).  None of the actions about which Blount complains rises to the level of an

12

adverse employment action, and Defendants MSSB and James Nielsen ("Nielsen") had sound, non-

13

discriminatory, non-retaliatory reasons for each of their actions.  The Court therefore should grant

14

summary judgment in this action.

15

**II.    STATEMENT OF UNDISPUTED FACTS**

16

  **A.    MSSB's Policies Prohibit Discrimination and Retaliation.**

17

  MSSB and its predecessors have maintained a strict Code of Conduct, applicable to all MSSB

18

employees, which requires respect in the workplace, and prohibits "discrimination or harassment on the

19

basis of race, color, . . . or any other characteristic protected by law" and "prohibits retaliation against any

20

individual who, in good faith, reports discrimination [or] harassment." Blount Dep,[1] Exs 17, 18, 19.

21

MSSB's Non-Discrimination/Anti-Harassment policy "strongly urges the reporting of all incidents of

22

discrimination, harassment or retaliation . . . so that an effective and thorough investigation can be

23

conducted promptly and discreetly, and effective remedial action can be taken when appropriate."

24

Declaration of Wendy Warner ("Warner Dec") Ex A.  The policy encourages employees to contact their

25

human resources representative to report any discrimination or retaliation and lists *twenty* additional

26

27

28

---

[1] All citations to Blount's deposition testimony and exhibits are cited as "Blount Dep," and are attached as Exhibit A to the Declaration of Sacha Steenhoek ("Steenhoek Dec").  All citations to other witnesses' deposition testimony and exhibits will be cited as "[Last Name] Dep," and are attached as Exhibits B through L to the Declaration of Daryl Landy ("Landy Dec").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                                              1                              DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1  points of contact should an employee feel uncomfortable reporting to HR.  *Id.*

2       **B.**    **Blount's Employment History and the FA Position.**

3      Blount began working for a Morgan Stanley predecessor in December 1985.  Blount Dep 15:5-7.

4  On June 1, 2009, Morgan Stanley & Co.'s Global Wealth Management unit entered into a joint venture

5  with Smith Barney (then a subsidiary of Citigroup, Inc.) to form MSSB.  Blount became an MSSB

6  employee at that time.  *Id.* 15:2-13.

7      In late May 2007, Nielsen joined Morgan Stanley as the San Jose office Branch Manager.

8  Nielsen Dep 11:1-9.  He oversaw the work of approximately 30 FAs, including Blount.  Nielsen Dep

9  11:18-22.  In June  2012, Nielsen resigned from MSSB to join a different firm.  Declaration of James

10  Nielsen ("Nielsen Dec") Ex A.  Greg Desmond then assumed the Branch Manager role.  Desmond Dep

11  14:14-15:16.

12      FAs provide investment advice and wealth management services to high net-worth clients, to

13  whom the FAs prospect various services.  Declaration of Greg Desmond ("Desmond Dec") ¶ 3. MSSB

14  provides FAs, including Blount, with various types of support, including a Company-paid assistant known

15  as a Client Service Associate ("CSA"), and occasionally distributes to FAs the opportunity to attempt to

16  retain accounts of recently departed FAs.  *Id.*  But FAs, especially very experienced FAs like Blount,

17  primarily are expected to develop their own business.  *Id.*

18      **C.**    **Blount Signed Releases Of All Race Discrimination and Retaliation Claims For**
19           **Conduct Occurring Before February 7, 2008 and March 9, 2009.**

20      On June 7, 2012, Blount signed a release and received compensation as a class member in *Jaffe*

21  *et al. v. Morgan Stanley and Co. Incorporated f/k/a Morgan Stanley DW Inc.*, Case No. C-06-3903-

22  TEH.  Blount Dep Ex 3.  Blount filed a claim in *Jaffe* but was not a named plaintiff and did not play an

23  active role in the litigation.  The *Jaffe* suit alleged race-based discrimination in the Company's account

24  redistribution policies and practices, as well as in the formation of partnerships at Morgan Stanley and

25  its subsidiaries.  The settlement agreement and release of claims Blount signed relinquished all race-

26  based discrimination claims relating to compensation, production, account distribution, team or

27  partnership formation, and allocation of support or business opportunities that occurred before February

28  7, 2008.  *Id.*; *see also* Blount Dep Ex 12.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2      2      DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1        On March 9, 2009, in anticipation of Blount's transition to work for the soon-to-be-formed

2    MSSB, Blount signed a "Financial Advisor/Investment Representative Retention Agreement."  Nielsen

3    Dec Ex P.  In exchange for a substantial payment, Blount agreed to release all claims against MSSB,

4    Morgan Stanley, Citigroup, their employees, and any and all of their former or existing affiliated

5    entities.  *Id.*  Blount's release included all claims for "discrimination or retaliation arising under any

6    federal, state, or local law" that arose prior to the date he signed.  *Id.*

7        **D.**    **Blount's Allegations of Discrimination During the Post-Release Time Period.**

8        Blount first filed a charge of discrimination with the California Department of Fair Employment

9    and Housing ("DFEH") on November 12, 2010.  Blount Dep Ex 2.  He filed his initial Complaint with

10   this Court on May 6, 2011 (Dkt. No. 1) and a First Amended Complaint ("FAC") on October 10, 2012.

11   Dkt. No. 67.  The FAC alleges five claims for relief for race discrimination and retaliation:

12   (1) intentional discrimination in employment based on race, color, national origin, and exercise of

13   protected rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"),

14   and the California Fair Employment and Housing Act, California Government Code §§ 12940 *et seq.*

15   ("FEHA"), against MSSB; (2) retaliatory employment practices under Title VII and FEHA against

16   MSSB; (3) intentional discrimination based on race, color, ethnic characteristics, ancestry in the making

17   and enforcement of contract under 42 U.S.C. § 1981 ("Section 1981") against MSSB; (4) intentional

18   discrimination based on race, color, ethnic characteristics and ancestry in the making and enforcement of

19   a contract under Section 1981 against Nielsen; and (5) failure to prevent discrimination and retaliation

20   under FEHA against MSSB.

21        Blount's FAC and deposition testimony focused on seven categories of MSSB and/or Nielsen's

22   alleged conduct:  1) declining to hire some of the candidates Blount recommended as FAs or FA

23   Trainees to work as Blount's "partner"; 2) enforcing MSSB's Company-wide policy to limit internship

24   positions to ten months in duration, which Blount contends reduced his support at trade shows and

25   seminars; 3) changing Blount's CSA assignment; 4) adherence to Company and securities industry

26   regulatory requirements before permitting Blount to work from home on a regular basis; 5) Nielsen's

27   supposedly providing more "perks" to other FAs in the branch; 6) the purported disparate distribution of

28   departing FAs' accounts to FAs who remained in the branch; and 7) MSSB's investigations of Blount's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2               3               DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1   complaints.

2          1.    **There Is No Basis For Blount's Allegations That Defendants Discriminated Against Him By Allegedly Not Hiring A Partner For Him.**

3

4         Blount claims that MSSB refused to hire candidates he recommended for the position of FA or

5   FA Trainee in the San Jose branch. FAC ¶¶ 3, 23, 24, 32. For the FA Trainee position, MSSB seeks

6   individuals who are not licensed for and do not have experience providing financial advice. Nielsen Dep

7   92:15-93:1. These recruits are given a multi-year training program, and must pass licensing exams and

8   meet early performance requirements to remain with MSSB as full-fledged FAs. *Id.* MSSB also recruits

9   experienced FAs, typically from competitor firms. *See* Benner Dep 34:5-35:4. To qualify for a lateral

10  FA position, the recruit must have his or her own book of business. *Id.*

11        a.    *Amy McCarthy*

12        In March 2010, Blount recommended Amy McCarthy for an MSSB FA Trainee position with

13  the goal of her partnering with Blount if she completed training successfully. Nielsen Dep 60:20-61:4.

14  *Nielsen hired McCarthy. Id.*; Blount Dep 90:1-11. Because McCarthy was not licensed (also known as

15  "registered") when she applied, MSSB hired her as an FA Trainee and required her to study for and pass

16  the Series 7 license exam. Nielsen Dep 60:20-62:12. McCarthy voluntarily left MSSB's employment

17  after only a few weeks. Blount Dep 123:14-124:13.

18        b.    *Deming Du*

19        In May 2010, Blount recommended Deming Du for the position of FA with the intent that he

20  serve as Blount's "junior partner." Blount Dep 90:1-11; Nielsen Dep 73:16-74:2. Blount introduced Du

21  to Nielsen in the branch. Nielsen Dep 73:16-74:10. Nielsen questioned Du's resume and the many jobs

22  he held over a short time. *Id.* Nielsen conferred with Stephanie Norwood, who worked for MSSB in

23  Chicago as a liaison between the branches and training department. *Id.*; Nielsen Dec. ¶ 5. Nielsen and

24  Norwood decided not to hire Du because of his work history and lack of recent FA experience. *Id.*

25  There is no evidence that the decision was related to Du's association with Blount.

26        c.    *Steven Parker*

27        Steven Parker, who is Caucasian, sought an FA Trainee position with MSSB in April 2010.

28  Nielsen Dec Ex R. Parker worked for Dean Witter from 1992 to 1996, had short stints at two other

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                        4                    DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1  financial firms, and then opened a muffler repair business.  Parker Dep Ex 1.  When he applied at MSSB,

2  he had been out of the financial services industry for over ten years.  *Id.*

3      Parker applied for an MSSB FA Trainee position online, including taking an FA assessment test.

4  Parker Dep Ex 6.  Based on his responses, he was rated a "C" overall and ranked "poor" in three of the

5  five categories evaluated – adaptability, sales disposition, and learning agility.  *Id.*  Nielsen interviewed

6  Parker for the FA Trainee position.  Parker Dep 79:1-80:4.  During the first interview, Nielsen did not

7  offer Parker a position and asked Parker to return for a second interview and to bring a written business

8  plan.  Parker Dep 82:14-83:3; 84:17-19; 91:3-6.

9      At the second interview with Nielsen, Parker showed Nielsen a customer list from his muffler

10  shop as evidence of his "business plan."  Parker Dep 83:4-14; 91:3-92:1 & Ex 7.  Nielsen then asked

11  Parker to meet with another FA in the branch, Dave Gambelin, because Nielsen had some concerns

12  about Parker's attitude and wanted a second opinion from Gambelin, a very successful FA whose

13  instincts he trusted.  Nielsen Dep 64:23-65:17; 68:22-69:2; 71:1-19; Parker Dep 103:25-104:12.  During

14  the second interview with Nielsen, Parker mentioned that he was Blount's former brother-in-law.

15  Nielsen Dep 69:3-6; Parker Dep 97:6-98:3.  At the end of the interview, Parker understood that he had

16  not been offered the position and that Nielsen still wanted him to speak with Gambelin for a "second

17  opinion."  Parker Dep 102:23-105:8; 105:24-106:6.

18      Nielsen also learned during the interview that Parker previously had worked at Dean Witter in

19  Cupertino.  Nielsen Dep 66:21-67:6.  After the interview, Nielsen asked colleagues who had worked at

20  Dean Witter in Cupertino, including the Complex Service Manager ("CSM"),[2] Julie Liske, for their

21  impressions of Parker.[3]  Nielsen Dep 66:21-68:8.  Liske informed Nielsen that she heard negative things

22  about Parker from his previous employment at Dean Witter.  *Id.*

23      Gambelin interviewed Parker by telephone.  Parker Dep 13:3-16.  After the phone interview,

24  Gambelin informed Nielsen that he also had reservations about Parker's attitude, thinking Parker would

25  be difficult to manage.  Nielsen Dep 71:5-19.  Based on his own and Gambelin's observations about

26  Parker's attitude, Parker's low scores on the assessment, and the information Nielsen learned from the

27  [2] A "Complex" is a group of branch offices.  *See* Desmond Dep 15:20-16:9.

28  [3] The CSM is responsible for branch operations and, among other responsibilities, hires and supervises
   the FA support staff.  Liske Dep 28:18-29:12.

5                        DEFENDANTS' MOTION FOR
                                                                 SUMMARY JUDGMENT
                                                                 CASE NO. C-11-02227 CRB

1   colleagues from the Cupertino branch, as well as Parker's unrealistic business plan of prospecting for

2   high net-worth clients from his muffler shop customer list, Nielsen decided not to hire Parker.  Nielsen

3   Dep 71:1-73:3; Nielsen Dec ¶ 4.

4           d.   *Tiffany Perez*

5           In August 2010, Tiffany Perez applied for an FA Trainee position in the San Jose branch at

6   Blount's recommendation.  Nielsen Dep 91:23-92:7; Nielsen Dec Ex S.  Nielsen interviewed Perez and

7   learned that she already was a fully registered representative.  Nielsen Dep 92:8-93:1.  Because a

8   significant part of the FA Trainee program involves studying for the licensing exams, MSSB's policy at

9   the time prohibited hiring into that program anyone who was fully registered.  Nielsen Dep 92:10-93:1.

10  Therefore Nielsen could not hire Perez as an FA Trainee.  *Id.*  Even if Perez had applied for an FA

11  position, which she did not, Perez was not qualified to be hired as an FA because she had no book of

12  business to bring to MSSB.  Nielsen Dep 93:2-11.  MSSB therefore decided not to hire Perez.[4]

13          e.   *Marianne Vernacchia*

14          In December 2010, Blount referred for an FA Trainee position Marianne Vernacchia, who most

15  recently ran her own family therapy practice for 16 years.  Nielsen Dec Ex U.  Oddly, Blount also

16  emailed Wendy Warner, the MSSB Human Resources representative who covered the San Jose branch,

17  that he did not want Vernacchia to interview at his branch.  Warner Dep Ex 81.

18          f.   *Dedrick Rhone*

19          In late 2011, Dedrick Rhone, another candidate Blount referred, applied for the FA Trainee

20  program.  Blount Dep 193:5-13; 194:3-6.  As with all applicants, Rhone was required to pass the

21  Securities Industry and Financial Markets Association ("SIFMA") Assessment exam to be considered for

22  an FA Trainee position.  Blount Dep 193:14-194:2 & Ex 13.  Rhone failed the SIFMA test and thus was

23  not eligible for hire at MSSB.  Blount Dep 194:7-195:2 & Ex 13.

24          g.   *Julie Barros*[5]

25          In September 2011, Nielsen hired Julie Barros as an FA Trainee. Nielsen Dep 112:13-21.  Barros

26  ---
    [4] During discovery, MSSB learned that Perez had pled guilty to a felony drug possession charge, which
27  rendered her statutorily disqualified from employment beginning August 24, 2011.  Perez Dep Ex 26; *see*
    Request for Judicial Notice ("RJN") Ex A; 15 U.S.C. §78c(a)(3)(a)(39).

28  [5] Barros was one of many racial minority applicants – including African-Americans – whom Nielsen
    hired as FAs and FA Trainees while managing the San Jose branch.  *See* "Desmond Dec" Ex B.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

EU1/ 51445993.2                    6                    DEFENDANTS' MOTION FOR
                                                        SUMMARY JUDGMENT
                                                        CASE NO. C-11-02227 CRB

1    previously had passed the Series 7 exam, but she was not fully licensed.[6]  *Id.* 112:13-113:11.  In March

2    2012, Blount sought permission from Nielsen to form a partnership with Barros, which Nielsen

3    approved.  Blount Dep Ex 5.  To date, Blount and Barros remain partners.

4          During the post-release period, before his request to partner with Barros, Blount did not seek to

5    partner with any current MSSB FAs or FA Trainees in his branch.  Blount Dep 83:6-24.  Blount decided

6    not to seek a partnership with the dozens of other MSSB FAs or FA Trainees because he did not feel a

7    "synergistic business" relationship with any of them.  *Id.*  From March 2009 until he partnered with

8    Barros, Blount did not make any efforts to determine whether any current MSSB employees might be

9    appropriate candidates with whom to partner.  *Id.*

10              2.    **There Is No Basis For Blount's Allegation That Defendants Discriminated**
                     **Against Him By Terminating An Intern Assigned to Him.**

11         Blount claims that MSSB discriminated against him by terminating an intern who had worked

12   sporadic part-time hours assisting Blount for over ten years.  FAC ¶¶ 3, 27.  Vicky McCall assisted

13   Blount "a few" hours per week with his attendance at trade shows and seminar presentations, and

14   followed up with "leads" (potential clients) gained at these events.  *See* Blount Dep 269:2-18.  Morgan

15   Stanley or MSSB paid McCall's wages throughout the entire period.  *See* Nielsen Dec Exs V-Y.  MSSB

16   terminated McCall based on its decision in 2010 to enforce its longstanding policy that *all* internship

17   positions be limited to a period of ten months, which applied equally to all FAs who employed interns.

18         In July 2010, MSSB HR representatives directed the Branch Managers to instruct any FAs who

19   wished to continue to employ interns beyond the ten-month limitation that to remain employed the

20   individuals must be reclassified as FA-paid CSAs,[7] and complete all CSA condition of employment

21   requirements.  Desmond Dec Ex C; Warner Dep 102:2-104:10.  McCall was just one of the many interns

22   subject to this requirement.  *Id.*; Liske Dep 23:8-24:5; 26:24-27:22.  Nielsen informed Blount that if he

23   wanted to continue to work with McCall, she would need to convert to a CSA position, and Blount

24   _____

25   [6]By September 2011, the policy that had precluded Defendants from proceeding with Perez's application
     for the FA Trainee position in August 2010 had changed slightly, allowing MSSB to consider for

26   employment FA Trainee candidates who had passed the basic Series 7 exam but were not yet fully
     registered because they had not obtained other required licenses.  Nielsen Dep 112:13-113:22.

27   [7] MSSB provides all FAs with shared or exclusive CSA support in relation to the FAs' revenue
     generation level and pays CSAs a full salary.  Nielsen Dep 31:2-32:8.  FAs have the option to provide

28   additional compensation to their assigned CSAs to supplement their income and hire additional CSAs at
     the FAs' expense.  *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                              7                    DEFENDANTS' MOTION FOR
                                                                 SUMMARY JUDGMENT
                                                                 CASE NO. C-11-02227 CRB

1   would be responsible for her compensation.  Blount Dep 23:1-25.  Liske, as the CSAs' manager,

2   informed Blount that McCall would need to complete 20 hours of continuing education to work as a

3   CSA, as the Company required of all CSAs.  Liske Dep 26:24-28:8; Blount Dep 23:8-19.  Blount

4   declined to convert McCall into the FA-paid CSA position, and therefore her employment was

5   terminated.  Blount Dep 269:2-273:6.  MSSB terminated other interns in 2010 before terminating

6   McCall, including several interns who had been assigned to Caucasian FAs.  Desmond Dec Ex C.

7   Furthermore, after informing Blount that his intern would be terminated, Nielsen suggested to Blount that

8   he ask his CSA to attend trade shows and provide assistance.  Nielsen Dep 58:14-59:18.  Blount declined

9   to do so.  Blount Dep 33:4-25.

10              **3.    There Is No Basis For Blount's Allegations That Defendants Discriminated**
                        **Against Him By Changing His CSA Assignment.**

11

12                    a.    *MSSB Assigns CSAs to FAs Based Primarily On FA Revenue Generation.*

13          In the San Jose branch, CSAs typically have supported between one and six FAs.  Nielsen Dec

14   Ex BB.  The number of FAs to which a CSA is assigned is based on the revenue generated by the FAs,

15   in the previous 12 months.  Warner Dep 56:18-57:4; Liske Dep 124:18-125:13.  Support staff currently

16   is allocated to FAs at a ratio of approximately $1.5 million in annual revenue per CSA.  Desmond Dep

17   51:20-52:8; 52:24-53:17.

18                    b.    *Defendants Decided To Change Blount's CSA Based On Purely Non-*
                           *Discriminatory Reasons.*

19          A number of CSAs have assisted Blount throughout his employment as an FA.  Beginning in

20   November 2006, Catherine Edens, a very experienced CSA, filled in to support Blount while MSSB

21   searched for another CSA to replace one who had departed that month.  Edens Dep 15:18-16:15.  Neither

22   Blount nor Edens had any complaints about each other during the period Edens supported Blount in

23   2006-2007.  Edens Dep 19:11-13; 22:10-18; Liske Dep 20:12-18 & Ex 44.  In fact, Blount told the CSM,

24   Liske, that Edens had been doing a "great" job.  Liske Dep Ex 44.

25          In approximately June 2007, MSSB hired Nicole (Nicci) Koke to assist Blount and other FAs.

26   Koke Dep 7:5-9; 10:1-19.  In early 2009, Blount began complaining to management that Koke was

27   moody and that he did not like her manner of answering his phones.  Blount Dep 253:5-13; Liske Dep

28   59:2-17 & Ex 47.  Koke told Liske that Blount complained about her whenever she declined his personal

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                                    8                        DEFENDANTS' MOTION FOR
                                                                            SUMMARY JUDGMENT
                                                                            CASE NO. C-11-02227 CRB

1  invitations to go to lunch with him and that Blount sent her personal text messages after hours and on

2  weekends, which Koke said caused her substantial distress.  Liske Dep 62:25-64:25.  As time passed,

3  Koke confided in Nielsen and Liske that she continued to have issues with Blount.  Koke Dep 77:16-

4  78:7; Liske Dep Exs 48, 49.

5         Meanwhile, throughout the summer of 2009, Blount continued to complain to Liske that Koke

6  was not answering his phones as directed.  Liske Dep Ex 48.  In Koke's July 2010 mid-year performance

7  evaluation, Blount again complained about Koke's manner of answering his phone.  Blount Dep 254:12-

8  256:4 & Ex 15.  In late September 2010, Blount and Koke exchanged a series of heated emails about a

9  form Koke was supposed to send to a client.  Nielsen Dec Ex DD.  Blount forwarded the emails to Liske.

10 Blount Dep 256:10-257:7 & Ex 16.  Koke also continued to express her concerns to Liske about Blount's

11 communications with her.  Liske Dep 63:25-64:25.  During the same time period, Koke had been

12 complaining to Liske about one of the other FA's to whom she was assigned, Robert Graham.  Koke Dep

13 55:25-56:15.  Graham also complained about Koke.  Nielsen Dec Exs CC, EE.

14        With two complaining FAs and an unhappy CSA in Koke, managers Liske and Nielsen

15 discussed making changes at the branch.  Liske Dep 66:6-67:7; Nielsen Dep 35:14-38:3.  Liske knew

16 that Blount had worked well with Edens in the past.  *See* Liske Dep 71:10-20; 76:24-77:15.  In addition,

17 the primary FA Edens supported at the time, Mike Hack, was willing to change his CSA assignment.

18 Nielsen Dep 43:7-12.  In October 2010, in an attempt to resolve all of the outstanding issues, Liske and

19 Nielsen asked Koke if she would be interested in transferring away from Blount and Graham to work

20 instead for Hack.  Koke Dep 68:6-70:8; Nielsen Dep 38:4-39:2.  Koke considered the suggestion and

21 then told Nielsen and Liske that she was interested in making that move.  Koke Dep 68:6-69:4.

22        On October 15, 2010, Nielsen informed Blount that Koke would no longer be working for Blount

23 or Graham but would instead start working for Hack and would continue working for FA Dave Foreman

24 (for whom she had worked when she worked with Blount and Graham).[8]  Liske Dep Ex. 49; Nielsen Dep

25 39:24-40:23, 41:25-42:15; Nielsen Dec Exs 15, 16.  Edens would support Blount along with three other

26 FAs, Jason St. Claire, Shashi Bhagat, and Graham.  Nielsen Dec Ex BB.  Nielsen and Liske believed the

27 transition would benefit Blount.  Nielsen Dep 40:18-41:15; 101:2-12.  Edens was fully licensed, which

28

---

[8] Because Nielsen was concerned about protecting Koke, he did not provide Blount the reasons for
reassigning Koke.  Liske Dep 76:21-77:15; Nielsen Dep 101:2-12; 130:2-13.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                          9                 DEFENDANTS' MOTION FOR
                                                           SUMMARY JUDGMENT
                                                           CASE NO. C-11-02227 CRB

1   Blount desired because it would allow his CSA to place trades and take more responsibility for customer

2   transactions. Liske Dep 54:20-55:3; Nielsen Dep 40:18-41:15. Edens and Blount had worked well

3   together before Koke's arrival. Edens Dep 22:10-18; Liske Dep Ex 44. The change appeared to be a

4   good solution for all involved.

5       Soon after the CSA transition in October 2010, in part to allow Edens to focus more on the three

6   other CSAs, Nielsen and Liske changed Bhagat's CSA assignment, leaving Edens serving only three

7   FAs. Liske Dep 71:21-72:4; Nielsen Dec Ex BB. Graham voluntarily resigned from MSSB soon after

8   to join a competitor, leaving Edens to support only Blount and St. Claire. Liske Dep 72:10-22. Nielsen

9   Dec Exs AA, BB. No other FAs were added to Edens' desk while she was assigned to Blount. *Id*.

10          c.   *Blount's CSA Coverage Consistently Has Been Greater Than For Comparable
11               Caucasian FAs*.

12      Prior to the CSA change in October 2010, Koke supported three FAs: Blount, Graham, and

13  David Foreman. Nielsen Dec Ex BB. Those three FAs' combined annual revenue totaled approximately

14  $1.5 million. *Id*. Blount's annual revenue at the time totaled approximately $633,000. *Id*. At the same

15  time, the other FAs in the branch had CSAs who supported between $1.0 million and $1.7 million in

16  annual revenue. *Id*. When Edens began supporting Blount in October 2010, she supported four FAs

17  with combined revenue of approximately $1.7 million. *Id*. When Bhagat transferred away from Edens'

18  desk shortly thereafter, the combined trailing 12-month revenue at Edens' desk dropped to $1.239

19  million, and after Graham left, Edens' ratio declined to below $1 million. *Id*. In contrast, after the

20  reassignment, Koke supported Hack and Foreman with combined trailing 12-month revenue of $1.48

21  million. *Id*. Other CSAs in the branch supported between $1.1 million (Christina Kayser, supporting **six**

22  FAs) and $1.8 million (Anna On, supporting **five** FAs). *Id*. Since January 2011, Blount consistently has

23  enjoyed among the lowest revenue level ratio per CSA in the branch. Nielsen Dec Exs AA, BB.

24          d.   *September 2012: MSSB Assigns A New CSA To Work With Blount*.

25      Based on Blount's complaints working with Edens, as soon as MSSB management was able to

26  restructure the CSA assignments they assigned a new CSA – Amy Chu – to support Blount. Desmond

27  Dep 99:4-101:4; Blount Dep 239:4-22. Blount has since informed MSSB management that he is

28  "extremely happy" with this arrangement, which continues to date. Desmond Dec Ex D.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                    10                   DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1

        **4.**    **There Is No Basis For Blount's Allegations That MSSB Discriminated Against Him By Requiring Him To Follow Company Policy Before Permitting Him To Work Regularly From Home.**

2

3           Blount alleges that MSSB prohibited him from working from home.  FAC ¶¶ 3, 29.  MSSB's

4 policy during the post-release period has been to require all FAs to obtain authorization before regularly

5 performing work at any location other than the branch.  Warner Dec Ex B.

6        **a.**    *MSSB Policy and Securities Industry Regulations Require Company Approval For FAs to Work From Alternate Locations.*

7

8           Throughout the post-release period, MSSB maintained and enforced its Alternative Work

9 Location policy which required approval before permitting any FA to work regularly from an

10 Alternative Work Location ("AWL") such as a home.  Warner Dec Ex B.  The AWL policy is designed

11 to comply with Financial Industry Regulatory Authority ("FINRA") investor protection rules, to ensure

effective supervision and oversight of FAs' conduct.  *Id*; Devine Dep 80:7-81:8; RJN Ex B.  The policy
12

13 requires that any for FA who wants to conduct business from outside the branch office on an "ongoing,

continuous, and/or consistent basis," he or she must first seek and receive approval from the Complex
14

15 Manager, Regional Director, and Division Risk Officer.  *See* Warner Dec Ex B.  An FA is not required

16 to seek approval to work away from the branch on a limited or irregular basis, such as working while on

vacation, from home while ill, or occasionally from home after the regular work day ends.  *Id*.
17

18        **b.**    *Blount Informs MSSB, For The First Time, That He Regularly Performs Work At His Home.*

19           For compliance purposes, all MSSB FAs must complete an annual Sales Questionnaire that asks,

20 among other questions, if the FA works from any location other than the branch.  Nielsen Dec Ex Q.  In

21 April 2009 and March 2010, Blount responded "No" to that question.  *Id*; Blount Dep Ex 7, §17.  In

22 January 2011, for the first time, Blount responded "Yes," specifying that he worked from home reviewing

23 client accounts and marketing activity, sending and responding to email, and calling and returning calls

24 from clients on a "daily" basis.  Blount Dep Ex 8, §17.  After receiving Blount's questionnaire, Tammy

25 Devine, the Complex Risk Officer, provided Blount with the MSSB policy listing the permitted and

26 prohibited activities away from the branch.  Warner Dec Exs B, D.  The policy prohibits all FAs from

27 regularly soliciting business, entering trades, or performing other specified work away from the branch

28 without prior approval.  Warner Dec Ex B.  Devine informed Blount that the policy applied equally to all

1  FAs, and that she communicated to every FA who responded affirmatively on the Questionnaire that they

2  must adhere to the policy.  Devine Dep Ex 98.

3             c.  *Blount Provides Medical Certification For the Need To Work From Home, and*
              *His Request is Granted.*

4

5        In response to the information Devine provided, Blount communicated to Devine and Warner that

6  he intended to seek approval for an AWL for medical reasons.  Devine Dep Ex 99.  Warner immediately

7  sent Blount an Alternative Work Location and Reasonable Accommodation Form so that he could seek

8  permission pursuant to MSSB policy that provides reasonable accommodation to disabled persons.  *See*

9  Warner Dec Ex F; Devine Dep Ex 99.  Blount returned a completed form to MSSB on April 19, 2011,

10  after which MSSB obtained the necessary senior manager approvals allowing Blount to work regularly

11  from his home effective June 7, 2011.  Warner Dec Ex G.

12        **5.  There Is No Basis For Blount's Allegations That Nielsen Provided Caucasian**
              **FAs With More "Perks".**
13

14        Nielsen occasionally offered tickets to sporting events to *any* branch employee who expressed

    an interest, *including Blount.*   Nielsen Dec Exs D, I, L, N.  Nielsen and other MSSB managers also
15

16   invited FAs and other staff, including Blount, to various trainings, lunches, happy hours, and other

    events to learn about current trends or to support client development.  Nielsen Dec Exs E, F, J, K.
17

18        **6.  There Is No Basis For Blount's Allegations That Nielsen Provided Comparable**
              **Caucasian FAs With Better Or More Accounts.**

19        Throughout the post-release period, Nielsen and other MSSB managers followed court-approved

20  MSSB policy to re-distribute the accounts of every FA who departed the branch.[9]  Pursuant to the policy,

21  the Branch Manager first distributes the accounts of a departing FA to the FA's remaining partner(s) or to

22  FAs with pre-existing relationships with clients on the distribution list.  *See* Blount Dep Exs 14, 25.  The

23  manager distributes the account relationships to the other FAs in the branch according to their "Power

24  Rankings," which consider five factors, including revenue generation.  *Id.*  The Power Rankings are

25  updated monthly.  *See* Blount Dep Ex 26.  The account distribution does not guarantee that the FA

26  assigned the account or accounts will keep the relationship; it merely is an opportunity for the FA to

27  attempt to do so, depending on the client's wishes.  *See* Hampton Dep 38:7-17.  The vast majority of

28  [9] The policy in effect throughout the post-release period was developed as part of the *Jaffe* settlement and
    approved by Judge Henderson.  Blount Dep. Ex. 12; Hampton Dep 24:18-25:19.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
EU1/ 51445993.2                                    12                    DEFENDANTS' MOTION FOR
                                                                        SUMMARY JUDGMENT
                                                                        CASE NO. C-11-02227 CRB

1   clients re-distributed to FAs follow their departed FA to his or her new firm.  *Id.*

2        Blount alleged in his deposition that he did not receive accounts from departing FAs Rodley

3   Fabie, Alice Liang, and Aron Shimada.  Blount Dep 296:6-3.  He was not entitled to accounts from these

4   FAs.  Fabie had only 12 account relationships to be distributed to the remaining FAs in the branch when

5   his employment with MSSB terminated, and Blount ranked 16th the prior month in the Power Rankings.

6   Blount Dep 299:21-6 & Exs 24, 26.  Likewise, when Shimada left MSSB he had only ten account

7   relationships and Blount's Power Ranking at the time was 18.  *Id.* 298:24-299:20 & Exs 24, 26.  When

8   Liang left MSSB, pursuant to MSSB policy, her accounts returned to the FA who had shared the

9   relationships with her when they had entered a partnership.  *Id.* Ex 24.

10              **7.    There Is No Basis For Blount's Allegations That MSSB Failed To Investigate**
                       **Blount's Complaints.**

11

12       Blount complained multiple times to MSSB managers and HR about his working conditions after

    March 9, 2009.  Some complaints contained allegations of racial discrimination, but most did not.
13
    MSSB followed its policies and investigated each of Blount's complaints.
14
                       a.    *October 2010:  Blount Complains About The Change In His CSA And Implies*
15                           *That Nielsen Is A KKK Member.*

16       During the post-release period, the first time Blount complained of discrimination at MSSB was

17  October 18, 2010.  *See* Blount Dep Ex 6 ("Please use this note as my first and initial letter of complaint

18  against Jim Nielsen"); Warner Dep 52:18-53:1.  After Blount learned that his CSA assignment changed

19  to Edens, Blount emailed Complex Manager Patricia Benner and complained that he believed the change

20  was racially motivated.  Blount Dep Ex 6.  In his message to Benner, Blount sought a contact in HR to

21  air his grievances.  *Id*.  He also informed Benner that he believed Nielsen's treatment of him was based

22  on Blount's race, and that Blount believed that if he were white, Nielsen would treat him differently.  *Id*.

23  Blount ended his email saying he was "surprised Jim [Nielsen] does not come in to work wearing a white

24  sheet and burning crosses."  *Id*.

25                     b.    *A Thorough Investigation Demonstrates That There Is No Basis For Blount's*
                             *Accusations.*
26
         In response to Blount's email message, Benner immediately attempted to call Blount to discuss
27
    his concerns and offer him the name of the proper human resources representative.  Warner Dep Ex 69.
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                          13                   DEFENDANTS' MOTION FOR
                                                             SUMMARY JUDGMENT
                                                             CASE NO. C-11-02227 CRB

1   Benner then emailed Blount and informed him that Warner, as the HR representative, would contact him

2   for more information.  *Id.*

3       The next day, on October 19, 2010, Warner spoke with Blount about his email to Benner.

4   Warner Dep Ex 68.  Warner then responded to each of Blount's accusations by speaking and meeting

5   with Blount and the other individuals Blount mentioned as well as intervieweing other FAs and branch

6   employees who might be witnesses, took copious contemporaneous notes, and consulted with her

7   supervisor about how to proceed.  Warner Dep 246:23-252:14 & Exs 73, 77, 79, 88; Warner Dec Exs C,

8   E, F; Liske Dep Ex 52.  Ultimately, Warner concluded that no discrimination or retaliation had occurred,

9   and she reported this finding to her supervisors.  Warner Dep 252:5-14.  She attempted to report her

10  findings to Blount, but she wanted to do so in person and was unable to arrange the meetings due to

11  various scheduling issues and eventually Blount's request to have his attorneys present.  *See* Warner Dep

12  Exs 87; 88.

13  **III.   STANDARD OF REVIEW**

14      Summary judgment should be granted where "there is no genuine issue as to any material fact

15  and the movant is entitled to judgment as a matter of law."  Fed. Rule of Civ. Pro. ("F.R.C.P.") 56.  If the

16  evidence in the record "could not lead a rational trier of fact to find for the non-moving party, there is no

17  'genuine issue for trial,'" and the motion should be granted.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith*

18  *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  A plaintiff may not defeat summary judgment

19  merely by relying on his or her pleadings or on conclusory statements.  F.R.C.P. 56(e).  A plaintiff also

20  may not avoid summary judgment by pointing to a "mere scintilla" of evidence; rather, a plaintiff must

21  affirmatively present specific admissible evidence sufficient to enable a reasonable trier of fact to find in

22  his or her favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

23      As discussed below, viewing all facts in the light most favorable to Blount, there is no genuine

24  issue of material fact as to the determinative issues.  Therefore, Defendants are entitled to summary

25  judgment on each of Blount's claims.

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

EU1/ 51445993.2                           14                          DEFENDANTS' MOTION FOR
                                                                      SUMMARY JUDGMENT
                                                                      CASE NO. C-11-02227 CRB

## IV.   LEGAL ARGUMENT

### A.   All Of Blount's Claims Are Limited To Actions Allegedly Occurring March 9, 2009 Or Later Because Of His Release.

Blount's March 9, 2009 signing of a general release of all claims, including specifically discrimination or retaliation claims against MSSB, Morgan Stanley, their employees, and any of their predecessors and successors, and his June 7, 2012 signing of the *Jaffe* agreement releasing all race-based discrimination claims for actions occurring before February 7, 2008, limit his claims to actions that allegedly occurred after March 2009.  *See Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 848 (9th Cir. 2004) (granting summary judgment on allegations of discrimination that occurred before signing of a general release); *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 460-61 (9th Cir. 1989) (a general release of Title VII claims bars a subsequent discrimination lawsuit).  Therefore, Blount cannot recover for any actions that occurred before March 9, 2009.[10]

### B.   Blount's First, Third, and Fourth Claims Of Race Discrimination Against MSSB And Nielsen Under Title VII, FEHA, And § 1981 Fail Because Blount Cannot Establish A *Prima Facie* Case Of Discrimination Or Show Pretext.

Blount alleges intentional discrimination due to his race in violation of FEHA, Section 1981, and Title VII.  Courts apply the familiar *McDonnell Douglas* burden-shifting analysis to race discrimination claims under these statutes.  *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework, a plaintiff must first establish a *prima facie* case of discrimination with evidence that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was performing his job satisfactorily at the time, and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Aragon*, 292 F.3d at 658.

---

[10] Blount's discrimination and retaliation allegations under FEHA are further limited to the time period after **November 11, 2009**, one year before he filed a complaint with the DFEH and a charge with the Equal Employment Opportunity Commission ("EEOC").  *Romano v. Rockwell Int'l, Inc*., 14 Cal.4th 479, 492 (1996); Cal. Gov't Code § 12960.  Blount first filed his administrative complaint with the DFEH on November 11, 2010.  Blount Dep Ex 2.  His Title VII claims similarly should be limited to actions occurring after **January 16, 2010**.  *Id.*  The deadline for filing a charge, and rendering any alleged conduct by the defendant actionable, is "three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e).  For purposes of his Title VII claims, Blount thus is barred from relying on conduct allegedly occurring before January 16, 2010.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2

15

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1       If a plaintiff can establish a *prima facie* case of discrimination, the burden shifts to the defendant

2 to articulate a legitimate, nondiscriminatory reason for the adverse employment actions. *Id*. This is a

3 minimal burden – any reason honestly believed, unrelated to the prohibited bias, precludes a finding of

4 discrimination. *Be. of Tr. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 (1978). Because the ultimate

5 issue is whether the employer had a discriminatory motive, the employer's reasons may preclude a

6 finding of discrimination, if honestly believed and nondiscriminatory on their face, even if such reasons

7 are "foolish or trivial or baseless." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 358 (2000).

8       If a defendant offers a legitimate reason for its conduct, the burden of proof returns to the plaintiff

9 to establish that the defendant's articulated reasons for the actions, were, in fact, pretextual. *Reeves v.*

10 *Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000). "Absent 'substantial responsive evidence of

11 the untruth of the employer's justification or a pretext, a law and motion judge may summarily resolve

12 the claim.'" *Slatkin v. Univ. of Redlands*, 88 Cal. App. 4th 1147, 1156 (2001). Here, Blount ultimately

13 bears the burden of proving that Defendants intentionally discriminated against him based on his race.

14 *Texas Dept. of Cmty. Affairs v. Burdine,* 450 US 248, 253 (1981) ("The ultimate burden of persuading

15 the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times

16 with the plaintiff."). A plaintiff may not defeat a defendant's motion for summary judgment merely by

17 denying the credibility of the defendant's proffered reason for the challenged employment action. *See*

18 *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994). Nor may he create a genuine issue of

19 material fact by relying solely on his subjective belief that the challenged employment action was

20 unwarranted. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 n.6 (9th Cir. 2006).

21       Blount cannot meet his burden here. His discrimination claims fail for any one of the following

22 independent reasons as reflected in the material undisputed evidence.

23       1.   **Blount Cannot Establish A *Prima Facie* Case Of Discrimination.**

24       a.   *Blount Cannot Show He Suffered Any Adverse Employment Action*.

25       None of the actions of which Blount complained in his FAC or his deposition rises to the level of

26 an adverse employment action. "[A]n adverse employment action is one that materially affects the

27 compensation, terms, conditions, or privileges of . . . employment." *Davis v. Team Elec. Co.*, 520 F.3d

28 1080, 1089 (9th Cir. 2008) (quoting *Chuang v. Univ. of Cal. Davis*, *Bd. of Tr.*, 225 F.3d 1115, 1126 (9th

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2       16       DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1   Cir. 2000)).  Adverse employment actions typically include hiring, firing, failing to promote, and other

2   actions that affect compensation and benefits.  *Salazar v. Locke*, No. CIV-5-10-1033 MCE, 2012 WL

3   843946, *9 (E.D. Cal. March 12, 2012); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 789

4   (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

5   amount to discriminatory changes in the terms and conditions of employment").

6          Based on the undisputed evidence, Blount, who has been performing solidly for over 25 years,

7   has suffered nothing so serious at MSSB.  *See, e.g., Kraus v. Presidio Trust Facilities Div.*, 704

8   F.Supp.2d 859, 864 (N.D. Cal. 2010) (supervisor's remarks about Mexican laborers, declining to move

9   employee to a new office, criticizing employee's work, and refusing to permit employee to be acting

10  supervisor did not rise to the level of adverse employment actions).  MSSB still employs him; he

11  received greater CSA support based on FA revenue generation than any other FA in the San Jose branch;

12  the Company offered him continued support to attend trade shows and present at seminars throughout the

13  post-release period; he is permitted to work regularly at an alternative work location (his home); he has

14  been working with a "partner" FA of his choosing; he is "extremely pleased" with his current CSA; and

15  as of July 2012, he felt he had his branch manager's support.  *See* § II(D)(1)-(6), *supra*; Blount Depo

16  239:4-242:16.

17                       (i)      *Not Hiring Some of Blount's Referral Candidates Is Not an Adverse*
                                  *Employment Action Against Blount.*
18
           Defendants' business decisions not to hire Du, Parker, Perez, Vernacchia or Rhone for an FA or
19
    FA Trainee position in the San Jose branch do not rise to the level of an adverse employment action
20
    *against Blount*.  To constitute an adverse employment action, the employer's action must materially
21
    affect *the employee's* "compensation, terms, conditions, or privileges of employment."  42 U.S.C.
22
    § 2000e-2(a)(1).  Blount cannot demonstrate that the decisions not to hire these individuals materially
23
    altered Blount's employment in any way.  *See Evans v. City of Sparta*, No. 5:10-cv-12, 2011 WL
24
    3626639 n.4 (M.D. Ga. Aug. 17, 2011) ("[Plaintiff's] vague allegation that he was forced to 'work
25
    harder' because other individuals [he recommended] were not hired presents less substantial effect than
26
    an employment action that directly affected his position, pay, job duties, or chances for advancement.").
27
    Blount claims that these decisions hindered his ability to find a qualified partner with whom to share his
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                                    17                    DEFENDANTS' MOTION FOR
                                                                        SUMMARY JUDGMENT
                                                                        CASE NO. C-11-02227 CRB

1    workload.  FAC ¶¶ 23-24.  Yet Blount always had the opportunity to seek partnership with the dozens

2    of current MSSB FAs and FA Trainees in his branch; he decided not to seek partnership until Barros

3    joined because partnering with the other FAs would not have been "synergistic."  Blount Dep 82:25-

4    83:24; 100:11-21.  Defendants' decisions, after hiring the first applicant Blount recommended, not to

5    hire Blount's other recommended applicants therefore did not materially alter his conditions of

6    employment.  *See Evans*, 2011 WL 3626639 at n.4.

7                        (ii)     *A Change In Support Staff Is Not an Adverse Employment Action.*

8            MSSB's policy to limit intern positions to ten months and the decision to replace Blount's CSA

9    with an equally experienced CSA with *more* licenses and ability to assist with securities trading do not

10   constitute adverse employment actions.  Blount admitted that after his intern left, he was permitted to

11   (but ultimately chose not to) use his CSA to assist him outside the office with trade shows and seminars.

12   Blount Dep 33:10-25.  Therefore, he cannot show that Defendants' decision materially affected his

13   compensation, terms, conditions or privileges of employment.  *See Gosho v. U.S. Bancorp Piper Jaffray*

14   *Inc.*, Case No. 00-1611-PJH, 2002 WL 34209804, * 4, (N.D. Cal. 2002) (holding denial of sales

15   assistance was not an adverse employment action because plaintiff did not provide evidence that it

16   resulted in a material change in the terms and conditions of her employment).

17           Likewise, Blount at almost all times during the post-release period received *greater* CSA

18   coverage than most of his peers, and he was never without support.  *See* § II(D)(3), *supra*.  While some

19   courts in the Ninth Circuit have found that the outright denial of administrative support may constitute

20   an adverse employment action (*see Strother v. Southern Cal. Permanente Medical Group*, 79 F.3d 859,

21   869 (9th Cir. 1996)), complaints about the *quality* of administrative assistance do not rise to the level of

22   an adverse employment action.  *Gosho v. U.S. Bancorp Piper Jaffray Inc.*, Case No. 00-1611-PJH, 2002

23   WL 34216845, * 3(N.D. Cal. 2002) ("While it is clear that [plaintiff] was frustrated with the quality of

24   assistance she received, she points to no evidence that she was ever denied an assistant, or that she

25   received lower-quality or less competent assistants than other Piper Jaffray brokers . . . .").  For instance,

26   in *Gosho*, just as in this case, a securities firm's FA complained that her employer intentionally

27   discriminated against her (based on her gender) by providing her with inadequate administrative

28   support.  *Id.*  She argued that her employer adversely affected her employment by providing her with "at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2

18

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1   least ten separate sales assistants, many of whom were unable to adequately perform their jobs." *Id.*

2   The Court distinguished the plaintiff's claim that she received "subpar" assistance from a claim of no

3   administrative support, which may constitute an adverse employment action. *Id.* The Court therefore

4   determined that the plaintiff had not suffered an adverse employment action. *Id.* Similarly here,

5   Blount's claim that he received "subpar" assistance – despite the undisputed facts that Edens was fully

6   licensed, experienced, and had previously worked well for Blount – does not constitute an adverse

7   employment action.

8              (iii)   *MSSB's Requirement That Blount Obtain Approval To Work From Home*
9                      *Regularly Is Not an Adverse Employment Action.*

10          MSSB's response to Blount's disclosure that he worked from home regularly, and its mandate

11  to comply with FINRA rules and Company policy to require Blount, like other similarly situated FAs, to

12  first obtain approval before working regularly outside of the branch, does not constitute an adverse

13  employment action.  First, any decision not to allow Blount to work from home regularly was

14  temporary, lasting only until Blount provided the necessary paperwork and MSSB obtained the required

15  approvals. *See* § II(D)(4), *supra*. This temporary inconvenience does not rise to the level of an adverse

16  employment action. *Martinez-Santiago v. Zurich N. Am. Ins. Co.*, No. 07 Civ. 8676 (RJH), 2010 WL

17  184450, * 7 (S.D.N.Y. Jan. 20, 2010) ("The denial of plaintiff's telecommuting request was a short term

18  [up to two months] inconvenience that did not rise to the level of an adverse employment action").

19  Second, even if MSSB had decided not to permit Blount to work from home at all, such a decision

20  would not constitute an adverse employment action. *See Brockman v. Snow*, 217 Fed.Appx. 201, 206

21  (4th Cir. 2007) ("A determination affecting [plaintiff's] ability to work where she chooses is not the type

22  of ultimate decision that this court has required for a prima facie case of discrimination."); *Smith v.*

23  *AVSC Intern., Inc.*, 148 F.Supp.2d 302 (S.D.N.Y. 2001) (not permitting plaintiff to work from home did

24  not constitute an adverse employment action).

25             (iv)   *Not Taking Blount to Lunch Is Not an Adverse Employment Action.*

26          Blount's claims that Nielsen did not take him to lunch as much as other FAs, even if true, would

27  not rise to the level of an adverse employment action.  Declining to invite an employee to lunch is not

28  considered an adverse employment action. *See Burlington N. & Santa Fe Ryco v. White*, 548 U.S. 53,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                                      19                          DEFENDANTS' MOTION FOR
                                                                                    SUMMARY JUDGMENT
                                                                                 CASE NO. C-11-02227 CRB

69 (2006) ("A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight").  Blount's similar allegations that Nielsen did not provide him with the same "perks" available to other FAs at the branch or that he was excluded from social events are baseless.  *See* Nielsen Dec Exs D-F, I-L, N.  Moreover, even if Blount had proof for these allegations, they would not constitute adverse actions.  *See Campbell v. Alliance Nat'l Inc.*, 107 F.Supp.2d 234, 246 n.8 (S.D.N.Y. 2000) (exclusion from social gatherings not an adverse employment action).

(v)     *Policy-Based Account Re-distribution Is Not an Adverse Employment Action.*

Contrary to Blount's unsupported allegations, the undisputed evidence – including Blount's admissions in his deposition – demonstrates that Blount received the accounts to which he was entitled under the court-approved account redistribution policy.  *See* § II(D)(6), *supra*.  He cannot produce any evidence that the distribution of departing FAs' accounts did not fully comply with MSSB's court-approved formula in the policy.  *Id.*  Blount's allegations of unequal account distribution therefore do not rise to the level adverse employment actions.  *See Gosho*, WL34216845 at *4 (absent a showing that plaintiff received fewer accounts than those to which she was entitled, account assignment did not support a *prima facie* case of discrimination).

b.     *Even If The Actions Were Adverse, Blount Cannot Prove Any Adverse Actions Were Taken Because Of His Race.*

Even if any of the actions about which Blount complains constitutes an adverse employment action, Blount cannot demonstrate that Defendants' actions were because of Blount's race.  He repeatedly has documented and testified that he *perceives* MSSB's actions to be based on his race, but he has not provided facts to support that perception.  Blount's suspicions and speculations that MSSB's actions were based on his race do not support a *prima facie* case.

c.     *Defendants' Actions Applied Equally To All Similarly Situated FAs, Disproving Discriminatory Intent.*

In addition to the lack of proof of racial bias or animus, the actions about which Blount complains equally affected other FAs who were not members of any protected class, thus disproving any discriminatory intent.  MSSB's race-neutral policies restricting interns' tenure, regulating alternative work locations, and determining account re-distributions dictated each of MSSB's actions.  *See* § II(D)(1)-(6), *supra*.  Because Blount cannot meet his burden of showing that Defendants treated

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
EU1/ 51445993.2                               20                    DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1 | Caucasian FAs more favorably, his claims fail. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080,

2 | 1094 (9th Cir. 2001) (a showing that similarly situated employees were treated in a like manner to

3 | plaintiff negates any showing of discrimination).

4 |                 2.    **Defendants Had Legitimate Business Reasons For Each Of The Actions Blount Alleges Were Adverse.**

5 |

6 |      Even if Blount could establish a *prima facie* case, the material undisputed facts demonstrate that

7 | Defendants had legitimate, non-discriminatory business reasons for their actions. *Guz*, 24 Cal. 4th at

8 | 353. Because the ultimate issue is whether the employer had a discriminatory motive, the employer's

9 | reasons, if honestly believed and nondiscriminatory on their face, may preclude a finding of

10 | discrimination, even if such reasons are "foolish or trivial or baseless." *Id*. at 358.

11 |      As discussed in Section II(D)(1), *supra*, Defendants had legitimate reasons for their hiring

12 | decisions regarding Blount's referrals for FA or FA Trainee positions. Defendants hired one candidate,

13 | declined four others because they were not qualified, and a sixth referral (Vernacchia) did not apply at the

14 | San Jose branch (and thus Nielsen had no input on her application). Nor can Blount show that

15 | Defendants declined to hire referrals because of his race. Moreover, MSSB uniformly applied its policy

16 | of limiting intern positions to ten months' duration. This policy resulted in the termination of all FA

17 | interns who remained employed longer than ten months, not just Blount's intern. Desmond Dec Ex C.

18 |      To resolve ongoing conflicts in the branch, to address Blount's complaints about his CSA Koke,

19 | and to reduce Koke's stress resulting from Blount's personal interactions with her, Defendants re-

20 | assigned to Blount another CSA with whom he previously had worked successfully. *See* § II(D)(3),

21 | *supra*. These actions were taken for legitimate, business related non-discriminatory reasons. In addition,

22 | MSSB was only following its own uniformly-applied policy and FINRA regulations when it required

23 | Blount to apply for and provide adequate documentation to support his request to work from home

24 | regularly before permitting him to do so. *See* § II(D)(4), *supra*. And MSSB followed its court-approved

25 | policy for distributing departing FAs' accounts. It cannot credibly be disputed that MSSB had legitimate

26 | reasons for its method of re-distributing accounts during the post-release period.

27 |                 3.    **Blount Cannot Show That Defendants' Reasons Were Pretextual.**

28 |      Because Defendants had legitimate, non-discriminatory reasons for the actions about which

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2

21

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1  Blount complains, the burden shifts back to Blount to prove with specific and substantial evidence that

2  Defendants' justifications were pretextual. *Guz*, 24 Cal. 4th at 355-57.  Blount must produce "specific,

3  substantial evidence of pretext."  *Wallis*, 26 F.3d at 890.  There is no such evidence.  *See* Blount Dep

4  89:5-25; 90:16-91:5; 189:8-190:20.

5  **C.  Blount's Second Claim For Retaliation Against MSSB Under Title VII and FEHA**
   **Fails Because He Cannot Establish A *Prima Facie* Case Of Retaliation Or Show**
6  **Pretext.**

7        Blount's retaliation claims under Title VII and FEHA also are analyzed under the *McDonnell*

8  *Douglas* burden-shifting standard.  *See Lynn v. Regents of the Univ. of California*, 656 F.2d 1337, 1341

9  (9th Cir. 1981); *Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 475-76 (1992) (California follows

10  federal rules on burden of proof and production of evidence).

11      1.  **Blount Cannot Establish A *Prima Facie* Case Of Retaliation.**

12        To establish a *prima facie* case of retaliation in violation of Title VII and FEHA, Blount must

13  prove that (1) he engaged in protected activity, (2) he was performing competently in his position, (3) he

14  suffered an adverse employment action, and (4) the action occurred under circumstances suggesting

15  retaliatory motive. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002), *Holmes v.*

16  *General Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426 (1993).   Like Blount's claim for discrimination,

17  his *prima facie* retaliation case fails because Blount cannot show that he suffered any adverse

18  employment actions or a retaliatory motive.

19          a.  *Blount Did Not Engage In Protected Activity During the Post-Release Period*
   *Until October 2010.*
20        During the post-release period, Blount made no protected complaints or allegations until October

21  18, 2010, after MSSB changed the CSA assigned to work for him.  *See* Blount Dep Ex 6.
22

23          b.  *Blount Cannot Show He Suffered Any Adverse Employment Action*.

      Under FEHA, as with his discrimination claim, Blount must show he suffered an adverse
24
employment action – that the action is "reasonably likely to impair a reasonable employee's job
25
performance or prospects for advancement" as distinguished from minor or relatively trivial actions that
26
are likely to do no more than displease.  *Horsford v. B. of Tr. of Calif. State Univ.*, 132 Cal. App. 4th 359,
27
373 (2005); *see also Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1049 (2005) (same standard for
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                22                DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
CASE NO. C-11-02227 CRB

1   adverse action in retaliation cases).  As shown above, Blount has suffered no adverse employment action

2   during the post-release time period.

3          Under Title VII, adverse employment actions for purposes of a retaliation claim are "only non-

4   trivial employment actions that would deter reasonable employees from [exercising protected rights] will

5   constitute actionable retaliation."  *Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1189 (9th Cir. 2005).

6   Even under the Title VII standard, Blount cannot show that any of the actions of which he complains

7   constitute an adverse employment action.  In fact, Blount continued to exercise protected rights –

8   complain to MSSB about actions he perceived to be discriminatory – long after each of the actions he

9   now alleges were retaliatory.  He cannot demonstrate that any of the actions would dissuade a reasonable

10  worker from exercising a protected right because it is undisputed that he was not so dissuaded.  *See id.*

11  Blount therefore cannot meet the requirement of showing that he suffered an adverse employment action.

12         As described above, none of the actions Blount claims were discriminatory – not hiring

13  candidates he recommended, terminating his intern, changing his CSA, alleged delay in approving an

14  AWL, and inequitably providing "perks" and distributing accounts –  rises to the level of an adverse

15  employment action.  These actions also do not support a retaliation claim because none would (nor did

16  they) "deter reasonable employees from [exercising protected rights]."  *Hardage*, 427 F.3d at 1189.

17         In addition, even if true, the alleged actions Blount specifically describes as being "retaliatory" –

18  Nielsen's assistant being "rude," Devine being "nasty" to him, and Liske hanging up the phone on him –

19  do not constitute adverse employment actions.  *See Kortan v. State of Cal.*, 5 F.Supp.2d 843, 853 (C.D.

20  Cal. 1998) (hostility from fellow employees is not an adverse employment action); *see also Faragher*,

21  524 U.S. at 788 (Title VII is not a general civility code).  These actions, if they occurred, would

22  constitute mere social slights from co-workers, and none of these actions dissuaded Blount from

23  continuing to complain to MSSB management and Human Resources.

24                        c.     *Blount Cannot Prove A Retaliatory Motive*.

25         Blount also cannot demonstrate circumstances suggesting a retaliatory motive.  To sustain a

26  *prima facie* retaliation claim, Blount must show that there was a causal link between the protected

27  activity and the adverse employment action(s) he suffered.  *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th

28  Cir. 1988).  Blount can present no evidence to sustain this requirement here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                                    23                        DEFENDANTS' MOTION FOR
                                                                            SUMMARY JUDGMENT
                                                                            CASE NO. C-11-02227 CRB

1    Blount cannot even show a close temporal proximity between his protected activity (his October

2  18, 2010 complaint) and the actions he alleges were adverse employment actions.  *See Morgan v.*

3  *Regents of U. of Calif.*, 88 Cal. App. 4th 52, 69 (2000) (proximity in time between protected activity and

4  allegedly retaliatory decision is necessary to prove retaliatory motive); *Davidson v. Midelfort Clinic, Ltd.*,

5  133 F.3d 499 (7th Cir. 1998) (five-month period insufficient to establish causal connection); *Richmond v.*

6  *ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient to establish causal

7  connection).  For example, the termination of Blount's intern, not hiring Parker, Perez, or Du, and the

8  decision to reassign his CSA all occurred *before* Blount's initial complaint in October 2010.  These

9  actions therefore cannot possibly be retaliatory.

10           2.    **MSSB Had Legitimate Business Reasons For Each Of The Actions Blount**
                   **Alleges Were Adverse.**
11

12    "If the plaintiff establishes a *prima facie* case, the burden of production – but not persuasion –

13  then shifts to the employer to articulate some legitimate, [non-retaliatory] reason for the challenged

14  action." *Villiarimo*, 281 F.3d at 1062.  "The defendant need not prove the absence of retaliatory intent or

15  motive; it simply must produce evidence sufficient to dispel the inference of retaliation raised by the

16  plaintiff." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982).  The employer's reasons do

17  not need to be objectively true, just honestly believed by the defendant. *Johnson v. Nordstrom, Inc.*, 260

18  F.3d 727, 733 (9th Cir. 2001).  As explained in detail above, the undisputed facts demonstrate that

19  MSSB had legitimate business reasons for all of its actions, thus defeating Blount's retaliation claims.

20           3.    **Blount Cannot Show That MSSB's Reasons Were Pretextual.**

21    To prove retaliation, Blount must also provide specific and substantial evidence that MSSB's

22  justifications for its actions are pretext for retaliation. *See Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217,

23  1220 (9th Cir. 1998); *Wallis*, 26 F.3d at 890 (to counter evidence that the employer's decisions were

24  nondiscriminatory, plaintiff must produce "specific, substantial evidence of pretext").  There is no such

25  evidence.  His retaliation claims fail for this additional reason.

26    **D.    Blount's Claim Of Failure To Prevent Discrimination And Retaliation Fails Because**
            **He Cannot Show Discrimination Or Retaliation Occurred.**
27

28    No action for failure to prevent discrimination in violation of FEHA lies if no discrimination or

retaliation in fact occurred. *Trujillo v. N. County Transit Dist.*, 63 Cal. App. 4th 280, 284 (1998).  Based

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

EU1/ 51445993.2                              24              DEFENDANTS' MOTION FOR
                                                            SUMMARY JUDGMENT
                                                            CASE NO. C-11-02227 CRB

1  on the undisputed material facts, Blount cannot prove that MSSB or Nielsen unlawfully discriminated or

2  retaliated against him.  Thus, as a matter of law, Blount cannot show that MSSB failed to prevent

3  discrimination or retaliation.

4        Furthermore, MSSB fully investigated each of Blount's many complaints of discrimination and

5  retaliation, and based on the findings, correctly concluded that his complaints were unfounded.  *See* §

6  II(D)(7), *supra*.  Therefore, even if a material fact dispute somehow were to prevent this Court from

7  dismissing Blount's discrimination or retaliation claims at this stage, his claims for failure to prevent

8  discrimination/retaliation fail.  *See California Fair Employment & Hous. Comm'n v. Gemini Aluminum*

9  *Corp.*, 122 Cal. App. 4th 1004, 1024-25 (2004) (reasonable steps that may exonerate an employer from a

10  section 12940(k) claim include a "prompt investigation," "establishment and promulgation of

11  antidiscrimination policies," and "implementation of effective procedures to handle complaints and

12  grievances regarding discrimination").

13  **V.   CONCLUSION**

14        Based on the undisputed material facts, Blount cannot meet his burden of proving discrimination

15  or retaliation.  Blount cannot even sustain a *prima facie* case of discrimination or retaliation because none

16  of the actions he describes during the post-release period constitute adverse employment actions.

17  Furthermore, even if the alleged actions could be considered adverse, there is no evidence that

18  Defendants based their actions on discriminatory or retaliatory motives, and Defendants present

19  substantial legitimate business justification for each of their actions.  The Court therefore should grant

20  Defendants' motion for summary judgment in its entirety.

21  Dated:  March 22, 2013                MORGAN, LEWIS & BOCKIUS LLP

22

23                                By  */s/ Daryl S. Landy*
                                    MARK S. DICHTER (*Pro Hac Vice*)
24                                  DARYL S. LANDY
                                    SACHA M. STEENHOEK
25
                                    Attorneys for Defendants
26  EU1/ 51364793.7

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

EU1/ 51445993.2                25                DEFENDANTS' MOTION FOR
                                                 SUMMARY JUDGMENT
                                                 CASE NO. C-11-02227 CRB